**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **THOMPSON TRACTOR CO., INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION 10-00351-KD-C** |
| | ) | |
| **J. RUSSELL FLOWERS, INC.,** | ) | |
| *As Owner of M/V SAFETY GLORY,* | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on Defendant's motion for summary judgment (Doc. 17),

Plaintiffs' cross-motion for summary judgment (Doc. 21), Plaintiff's Response to Defendant's

motion (Doc. 22), Defendant's Reply (Doc. 26) and Plaintiff's Reply (Doc. 27).

## I.    Background[1]

Plaintiff Thompson Tractor Co., Inc., ("Thompson") is an Alabama corporation with its

principal place of business in Birmingham, Alabama; it is in the business of furnishing marine

propulsion equipment, marine generators and associated equipment.  (Doc. 11).

Defendant J. Russell Flowers, Inc. ("Flowers"), owner of the M/V SAFETY GLORY

---

[1]  When ruling on a motion for summary judgment, the Court views "the evidence and all reasonable inferences in the light most favorable to the non moving party." Battle v. Board of Regents for Ga., 468 F.3d 755, 759 (11th Cir. 2006).   The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment. See, e.g., Gerling Global Reins. Corp. of Am. v. Gallagher, 267 F.3d 1228, 1233 (11th Cir. 2001).  The Eleventh Circuit has held that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."  United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted).  The Court is mindful that "'[w]hen both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.'" Muzzy Products, Corp. v. Sullivan Indus., Inc., 194 F. Supp. 2d 1360, 1378 (N.D. Ga. 2002) (quoting Gart v. Logitech, Inc., 254 F.3d 1334,1338-1339 (Fed. Cir. 2001)). The Court has reviewed the facts and has made its own examination of the evidentiary record in formulating the relevant facts and issues.

("the vessel"), is a Mississippi corporation with its principal place of business in Greenville, Mississippi. (Doc. 17-3 at 6 (Aff. J.R.Flowers, Jr.)). The vessel, the M/V SAFETY GLORY, is a 70 foot inland river towing vessel (Official Number: 1223153). (Id.)

Non-party B&B Boatbuilders, Inc. ("B&B") is a shipbuilder located in Bayou La Batre, Alabama. (Doc. 17-3 at 3).

On July 26, 2006, Flowers contracted with B&B for the construction of the vessel, the M/V SAFETY GLORY. (Id. at 3-5). B&B then contracted with Thompson for the purchase of certain diesel engines (marine propulsion engines consisting of two (2) 3508 Caterpillar engines with appropriate gears and other pertinent equipment) to be installed on the vessel during construction. (Id.) The vessel was constructed at the B&B facilities in Bayou La Batre, Alabama. (Doc. 17-3 at 6 (Aff. J.R.Flowers, Jr.)).

Thompson issued an invoice to B&B for payment for the engines in the amount of $498,160,00. (Doc. 17-3 at 5). The invoice shows a "Doc. Date" of June 10, 2009, and an "Invoice Date" of June 12, 2009. (Id.) Payment was due from B&B "net 183 days," or 183 days later (thus either December 10, 2009 or December 12, 2009). (Id.)

Upon completion of construction, Flowers accepted delivery of the vessel on November 19, 2009. (Doc. 3 at 1). Flowers is the vessel's owner. (Doc. 17-3 at 6 (Aff. J.R.Flowers, Jr.)). Flowers filed a Certificate of Documentation with the U.S. Coast Guard, listing the vessel's hailing port as New Orleans, Louisiana. (Doc. 17-3 at 8).

The vessel was constructed for the purpose of being leased out to AEP River Operations for service as harbor tug in the New Orleans harbor at New Orleans, Louisiana. (Doc. 17-3 at 6 (Aff. J.R.Flowers, Jr.)). The vessel was not constructed to operate in Alabama, and has not

operated in Alabama except for a few hours when the vessel traveled from Bayou La Batre, Alabama, to Mississippi waters and on to New Orleans, Louisiana. (Id.)

B&B was solely responsible for ordering and paying for the engines to be installed on the vessel during construction. (Id.) Flowers did not contract with Thompson for the purchase of the engines and B&B was paid in full for the construction of the vessel. (Id.)

Thompson was not paid by B&B for the engines.

On June 1, 2010, Thompson filed suit against B&B in the Circuit Court of Mobile County, Alabama (CV-2010-901217.00) for non-payment, in the amount of $1,027,326.21 plus interest, attorney's fees and court costs. (Doc. 17-3 at 9-10). On July 30, 2010, a default judgment was entered against B&B and in favor of Thompson, in the amount of $1,190,037.51 plus court costs. (Doc. 17-3 at 17).

On June 10, 2010, Thompson filed suit against Flowers in the Circuit Court of Mobile County, Alabama, who subsequently removed this action to this Court. (Doc. 1). In this suit, Thompson seeks to enforce a watercraft lien against the vessel.

## II.    Conclusions of Law

### A.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) governs Procedures, and provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> **(A)** citing to particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

*(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

Defendant, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v.

Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

## B.    Discussion

In the Complaint, Thompson asserts a statutory lien against the vessel, in the amount of $498,160.00, pursuant to Ala. Code § 35-11-60 (the Alabama Watercraft Lien Statute) (1975). Section 35-11-60 (emphasis added) provides as follows:

> **A lien is hereby declared on any ship**, steamboat or other watercraft, whether registered, enrolled or licensed or not, **that may be built**, repaired, fitted, furnished, supplied or victualed **within this state, for work done, or material supplied by any person within this state,** in or about the building, repairing, fitting, furnishing, supplying or victualing such ship, steamboat or other watercraft, and for the wages of the masters, laborers, stevedores and shipkeepers of such ship, steamboat or other watercraft, in preference to other liens thereon for debts contracted by, or owing from, the owners thereof; and for wharfage and dockage; and such lien may be asserted in any court of competent jurisdiction.

As such, Alabama law provides a lien on vessels constructed within the State of Alabama for the benefit of persons who provide labor or materials contributing to the construction.

Thompson supplied the engines at issue for the vessel, which was a new vessel built within the State of Alabama (in Bayou La Batre, Alabama). Thompson was not paid by B&B, the party with whom it had contracted, for the engines. Thompson contends that it has satisfied all of the requirements for obtaining a lien against the vessel under Section 35-11-60 and properly asserted its lien by filing an action for a lien against the vessel's owner, Flowers, in the Mobile County Circuit Court (which was removed to this Court).

At the outset, the parties' cross-motions for summary judgment do not center on a factual dispute. Rather, the parties' motions center on Section 35-11-60 itself and the case law (however sparse) addressing the statute. As such, this summary judgment rises and falls upon a legal,

rather than factual, determination.

Specifically, Flowers, the vessel's corporate owner, argues that because it is a non-resident of Alabama (Mississippi corporate resident) and the vessel is not "home ported" in Bayou La Batre, Alabama where she was built (rather in New Orleans, Louisiana), the vessel is not subject to the lien imposed by Section 35-11-60. Flowers' position is primarily rooted in the Alabama Supreme Court case Lever Transp. Co. v. Ollinger, 87 So. 597 (Ala. 1920), which held that the Alabama watercraft lien statute did not apply since the vessel was owned by a non-resident, even though the work involved new construction performed in Alabama. Flowers also relies upon Scatcherd Lumber Co. v. Rike, 21 So. 136 (1897) (interpreting the statute to apply only to services or materials provided to a vessel when the vessel was in its home port (where the owners have their homes) regardless of whether the work was new construction or repairs) and Lever Transp. Co. v. Standard Supply Co., 87 So. 598 (Ala. 1920) (noting that the language of the Mississippi statute was different than the language of the Alabama statute and that the Mississippi statute could not be interpreted as limiting its application to materials supplied or work performed to a vessel in its home port)

In contrast, Thompson asserts that there is no requirement in Section 35-11-60 that materials be provided at the owners' home port in order to support a watercraft lien. In essence, Thompson contends that Lever Transp. was wrongly decided because under the basic fundamentals of statutory construction, Section 35-11-60 should be read as it is written, but instead, the Alabama Supreme Court erroneously relied upon a "single ambiguous sentence" in Scatcherd for its holding that a home port requirement on liens for new construction of vessels existed. Additionally, Thompson asserts that the Scatcherd decision should be interpreted to

mean that the home port doctrine was a federal maritime law which applied only to the provision of repairs and supplies, not new/original construction of a vessel.

The vessel was constructed in Bayou La Batre, Alabama.  The vessel's corporate owner, Flowers, is a non-resident, as it is a resident of the State of Mississippi.  The vessel's "hailing port" or home port is New Orleans, Louisiana.  This Court cannot unilaterally decide that the Alabama Supreme Court's 1920 holding in <u>Lever Transp.</u> was wrong.  Pursuant to the mandate of <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938) "a federal court in a diversity case is required to apply the law of the state in which the federal court sits."  <u>Goodwin v. George Fischer Foundry Sys., Inc.</u>, 769 F.2d 708, 711 (11th Cir. 1985).  "[T]he diversity court is bound to decide the case the way the state supreme court would decide it."  <u>Towne Realty, Inc. v. Safeco Ins. Co. of America</u>, 854 F.2d 1264, 1269 at n.5 (11th Cir. 1988).  As such, this Court applies the law of the Alabama Supreme Court.  Under current Alabama case law, Thompson can assert no watercraft lien against Flowers' vessel because the vessel was constructed for a Mississippi owner in the State of Alabama, not its home port of New Orleans, Louisiana.  These facts, pursuant to <u>Lever Transp.</u>, support a finding of summary judgment in favor of Flowers.

Thompson also contends further, that the home port doctrine was abrogated in its entirety by the enactment of the Federal Maritime Lien Act,[2] 46 U.S.C. § 31341 *et seq.*,[3] ("the FMLA") in 1910 (citing <u>Racal Survey USA, Inc. v. M/V COUNT FLEET</u>, 231 F.3d 183, 187 (5th Cir. 2000)).  However, the <u>Racal</u> decision is distinguishable from the facts of this case, and as such, inapplicable.  The FMLA preempted various state statutes "with respect to the conferral of

---

[2] Also referenced as the Maritime Commercial Instruments and Liens Vessel Identification Act.

[3] This section superseded 46 U.S.C. § 971 in 1989 without any significant change.

maritime liens for repairs, supplies, and other necessaries." Racal, 231 F.3d at 187. The Fifth

Circuit, applying the FMLA in Racal, did not speak to new construction. Rather, the Racal court

explained that the Act eliminated the distinction that had been drawn between a vessel in a home

port and a vessel in a foreign port *under which a lien could be given for necessaries furnished to*

*a vessel*. This case does not involve repairs, supplies or necessaries. This case involves new

construction of a vessel. The FMLA does not apply *to new construction* and thus, did not

abrogate the "home port" doctrine *for new construction of a vessel*.[4]

Accordingly, it is hereby **ORDERED** that Plaintiff Thompson's cross-motion for

summary judgment (Doc. 21) is **DENIED** and Defendant Flowers' motion for summary

judgment (Doc. 17) is **GRANTED.**

A separate Judgment shall be issued in conjunction with this Order.

**DONE** and **ORDERED** this the **28th** day of **January 2011.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[4] Contracts to construct a new vessel traditionally have been held to be outside the admiralty
jurisdiction and thus, outside the FMLA. See, e.g., New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 98-
99 (1922) ("The Jack-o-Lantern") (holding that a claimant of lien under FMLA for supplies and services
furnished must establish that agreement was maritime in that it dealt with repair rather than original
construction and original ship construction contracts do not support a maritime lien under the Act). See
also e.g., Boat La Sambra v. Lewis, 321 F.3d 29, 30 (9th Cir. 1963) (finding that contracts for original
construction do not give rise to a maritime lien as they are non-maritime and not within admiralty
jurisdiction); Advance Welding Co. v. M/V CORRA D, 299 F. Supp. 736, 737 (E.D. La. 1969) (same);
The Mountaineer, 286 F. 913, 914-915 (9th Cir. 1923) (same).